**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | Case No. 10-43204-MSH |
| BETTY LECLAIR ) | |
| RICHARD P. LECLAIR ) | |
| ) | |
| Debtors. ) | |

**MEMORANDUM OF DECISION ON CHAPTER 7 TRUSTEE'S OBJECTION TO EXEMPTIONS**

The Chapter 7 trustee has objected to the debtors' claimed exemptions in a vehicle and to Ms. LeClair's claimed exemption in certain retirement assets. The debtors oppose. After a nonevidentiary hearing on the objection, the parties submitted memoranda of law. The trustee challenged the debtors' claimed exemptions in a 2004 Dodge Durango because they failed to provide documentation to establish that the automobile was jointly owned. The trustee asserted that only one of the debtors could properly claim an exemption in the vehicle. The debtors failed to respond to this objection and thus have waived any opposition to it. Furthermore, although Ms. LeClair claimed an exemption in what she described on the debtors' schedule of exemptions (Schedule C of the debtors' schedules of assets and liabilities attached to their bankruptcy petition) as two separate types of retirement assets, namely individual retirement accounts ("IRAs") and an annuity, at the hearing on the trustee's objection he asserted that Ms. LeClair owns only a single annuity. The debtors did not dispute or contradict the trustee's contention. Consequently what remains before me is a dispute over the exemption of Ms. LeClair's annuity.

1

**Background**

On July 15, 2008 the debtor Betty LeClair, then age 66, purchased from the John Hancock Life Insurance Company (U.S.A.) for herself as the owner and annuitant what is described in the policy as a "flexible payment deferred combination fixed and variable annuity contract."[1] She made an initial payment of $86,000 into the annuity. There have been no other premiums paid. The Specifications Page of the annuity contract (appearing at page 5 of the contract) appears to contain a summary of its principal features. It describes the annuity as an "individual retirement annuity" with a maturity date of May 5, 2032.

Ms. LeClair listed among her assets on Schedule B of the schedule of assets and liabilities, the John Hancock annuity valued at $70,460, and three IRAs, all described as "RBC IRA's," along with the account number for each, valued at $16,217, $24,676, and $0, respectively. On Schedule C, the list of exempt assets, the debtors elected the state exemptions and Ms. LeClair claimed an exemption of $19,950 in what that schedule describes as "IRA John Hancock" pursuant to Mass. Gen. Laws ch. 168 §§ 41 and 44, ch. 170 § 35, ch. 171 § 84 and ch. 246 §28. She also claimed an exemption of "$0" in what Schedule C describes as an "Annuity" of unknown value. As indicated previously, the trustee objected to both the "IRA John Hancock" and "Annuity" exemptions but at the hearing on the objection he clarified his position because he had determined that there were no IRAs. Although not filing a formal written amendment to Schedule C, Ms. LeClair conceded that there are no IRAs to exempt but pressed

---

[1] Each party submitted a copy of what each refers to as the annuity contract. They agree that the annuity contract consists of a contract, two endorsements and a rider. The only difference between the two submissions is that the document provided by the trustee contains additional pages not included in the debtor's submission. Specifically, the trustee's copy includes the Specifications Page and the Initial Allocation of Net Purchase Price.
.

2

her claim of exemption in the John Hancock annuity. She also now claims an entirely different statutory basis for exempting the annuity, Mass. Gen. Laws ch 175 § 119A,[2] which she asserts entitles her to exempt its full value.

## Discussion

Ms. LeClair seeks to fully exempt the value of her annuity based on Mass. Gen Laws ch. 175 § 119A which provides:

> If, under the terms of *any annuity contract* or policy of life insurance, or under any written agreement supplemental thereto, issued by any life company, the proceeds are retained by such company at maturity or otherwise, no person entitled to any part of such proceeds, or any instalment [sic] of interest due or to become due thereon, shall be permitted *to commute, anticipate, encumber, alienate or assign the same, or any part thereof, if such permission is expressly withheld by the terms of such contract, policy or supplemental agreement*; and if such contract, policy or supplemental agreement so provides, no payments of interest or of principal shall be in any way subject to such person's debts, contracts or engagements, nor to any judicial processes to levy upon or attach the same for payment thereof. No such company shall be required to segregate such funds but may hold them as a part of its general corporate funds. (Emphasis added).

The trustee, as the objecting party, has the burden of proof, Fed. R. Bankr. P. 4003(c), and must establish by a preponderance of the evidence that the claimed exemption is improper. *In re Gonsalves*, 2010 WL 5342084, *6 (Bankr. D. Mass. 2010). The Ninth Circuit Court of Appeals succinctly delineated the burden shifting framework of Rule 4003(c).

---

[2] Rule 1009(a) of the Federal Rules of Bankruptcy Procedure permits a debtor to amend a "voluntary petition, list, schedule, or statement" at any time as a matter of course and give notice of such amendment "to the trustee and any other entity affected thereby." Rule 1009-1 of the Massachusetts Local Bankruptcy Rules requires a debtor seeking to amend the schedule of exemptions after the time to object to exemptions has expired to do so by motion to which the amended schedule must be attached. Although the debtors have not filed a motion to amend, I have chosen to treat the debtors' post-hearing memorandum, which reiterates the new basis and value for Ms. LeClair's exemption of the annuity proffered at oral argument, as such a motion to which the trustee's objection will apply.

3

> A claimed exemption is presumptively valid.... Once an exemption has been claimed, it is the objecting party's burden ... to prove that the exemption is not properly claimed. Initially, this means that the objecting party has the burden of production and the burden of persuasion. The objecting party must produce evidence to rebut the presumptively valid exemption. If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper. The burden of persuasion, however, always remains with the objecting party.

*Carter v. Anderson (In re Carter),* 182 F.3d 1027, 1029 n. 3 (9th Cir.1999) (internal quotation marks and citations removed).

The trustee challenges the applicability of Mass. Gen Laws ch. 175 § 119A and in support of his objection relies upon what he identifies as conflicting language in the annuity contract with regard to Ms. LeClair's ability to assign the contract or change its owner or beneficiary at any time before the maturity date. He compares two of the General Provisions with the Individual Retirement Annuity Endorsement. The General Provisions, found in part 2 of the contract, include the following:

> Assignment: You may assign this Contract at any time prior to the Maturity Date…
>
> Claims of Creditors: To the extent permitted by law, no benefits payable under this Contract will be subject to your, the Beneficiary's, or the Annuitant's creditors.

The Individual Retirement Annuity Endorsement, which the parties agree is part of the annuity, expressly states that the contract is amended as set forth in the endorsement "to qualify as an Individual Retirement Annuity … under Section 408(b) of the Internal Revenue Code". The Individual Retirement Annuity Endorsement further provides in pertinent part:

> The Owner must be one natural person who is the sole Owner and Annuitant. … Except as otherwise permitted under Section 7 of this Endorsement, and otherwise permitted under applicable federal tax law, neither the Owner nor the Annuitant may be changed….

4

> The Contract is established for the exclusive benefit of the Owner or his or her beneficiaries. The Owner's interest under the Contract is nontransferable, and except as provided by applicable federal tax law, is nonforfeitable. If the Contract contains a part titled LOAN PROVISIONS, this part of the Contract is deleted.[3]

While the trustee is correct that the assignment language in the General Provisions of the contract is inconsistent with the language of the Individual Retirement Annuity Endorsement, he overlooks the Endorsement's express direction that "[w]here the provisions of this Endorsement are inconsistent with the provisions of the Contract, including the provisions of other endorsements or riders issued with the Contract, the provisions of this Endorsement will control." Thus the annuity read in its entirety prohibits the assignment of Ms. LeClair's ownership interest and does not run afoul of the anti-alienation requirement of Mass. Gen. Laws ch. 175 § 119A.

The trustee also argues that the Endorsement must be ignored because, although it states it is amending the contract "to qualify as an Individual Retirement Annuity … under Section 408(b) of the Internal Revenue Code," 26 U.S.C. § 408(b), the facts surrounding the establishment of the contract are inconsistent with § 408(b) of the Internal Revenue Code. First, he asserts that Ms. LeClair exceeded the annual contribution limit of $6,000 under 26 U.S.C. § 219(b)(5). The trustee is correct that Ms. LeClair's one-time contribution of $86,000 exceeds the relevant individual retirement account contribution limits. But the trustee overlooks the introductory language of paragraph 3 of the Endorsement which states:

> A premium or Payment permitted under the Contract may not include any amounts other than a rollover contribution (as permitted by IRC Sections 402(c), 402(e)(6), 403(a)(4), 403(b)(8), 403(b)(10), 408(d)(3) and 457(e)(16)), a

---

[3] There is no evidence demonstrating that the annuity contract had any section entitled "Loan Provisions" and thus there is no basis to find that paragraph 2 has been deleted.

5

> nontaxable transfer from an individual retirement plan under IRC Section 7701(a)(37), a contribution made in accordance with the terms of a Simplified Employee Pension as described in IRC Section 408(k), and a contribution in cash not to exceed the amount permitted under IRC Sections 219(b) and 408(b) (or such other amount provided by applicable tax law.)

The trustee has adduced no evidence that the $86,000 payment was a cash contribution subject to the $6,000 limitation as opposed to a rollover from some other retirement vehicle.

Second, the trustee notes that the Internal Revenue Code requires that distributions from an individual retirement annuity begin by the time the account owner has reached age 70½. The trustee argues the John Hancock annuity provides for payments beginning only on the maturity date of May 5, 2032, when Ms. LeClair will be approaching 90 years of age. But paragraph 4 of the Individual Retirement Account Endorsement which, as has been observed, supersedes any conflicting contract terms provides that:

> Notwithstanding any provision of the Contract to the contrary, the distribution of the Owner's interest in the Contract shall be made in accordance with the requirements of IRC Sections 401(a)(9) and 408(b)(3) and the regulations thereunder, the provisions of which are incorporated herein by reference.

Paragraphs 5 and 6 of the Endorsement underscore that payments from the annuity will begin in accordance with the tax laws applicable to IRAs by providing:

> 5. As used in this Endorsement, the term "required beginning date" means April 1 of the calendar year following the calendar year in which the Owner attains age 70½, or such later date provided by applicable federal tax law.
>
> 6.(a) Unless otherwise permitted under applicable federal tax law, the Owner's entire interest will commence to be distributed no later than the required beginning date…

It thus appears that Ms. LeClair's annuity qualifies as an individual retirement annuity under § 408(b) of the Internal Revenue Code. But just because the annuity may be characterized

6

as an individual retirement annuity, it does not follow automatically that it is entitled to the protection of Mass. Gen. Laws ch. 175 § 119A.

Although there is scant law interpreting § 119A, as Judge Boroff noted, "[t]he section is narrowly focused and protects a beneficiary's interest from his or her creditors only where the terms of the policy *expressly* prohibit the beneficiary from "commut[ing], anticipat[ing], encumber[ing], alienat[ing] or assign[ing]" that interest in the policy. *In re Sloss,* 279 B.R. 6, 13 (Bankr. D. Mass. 2002) (emphasis in the original). In other words, if any one of the enumerated characteristics is not expressly contained in the annuity, it would not be exempt under § 119A. It has been noted previously that Ms. LeClair's annuity contains an anti-alienation provision thus satisfying one of the requisites of § 119A. It does not, however, expressly satisfy them all.

According to Webster's Dictionary, "commute" is "to change one thing for another; often to change stream of payments into one lump sum." Webster's Third World Dictionary (3d Ed. 2008). *See also Trucken v. Metropolitan Life Ins. Co*., 303 Mass. 501, 506 22 N.E.2d 120, 123 (1939). The dictionary defines "anticipation" as "to cause to occur prematurely" or "to realize or actualize before an expected or plausible time" *Id.* There is nothing in the annuity which prohibits the commutation or anticipation of the proceeds. The closest any provision in the annuity comes to such a prohibition is in paragraph 4 of the Individual Retirement Endorsement which provides:

> Notwithstanding anything in the Contract to the contrary, the distribution of the Owner's interest in the Contract shall be made in accordance with the requirements of IRC Sections 401(a)(9) and 408(b)(3) and the regulations thereunder, the provisions of which are herein incorporated by reference.

But the Internal Revenue Code does not prohibit the commutation or anticipation of funds held in an individual retirement annuity. The statute merely discourages it by imposing a 10 percent

7

penalty for early withdrawals.[4] Thus the annuity at issue does not qualify for protection under Mass. Gen Laws ch. 175 § 119A.

The trustee suggests that Ms. LeClair's annuity would appropriately be subject to exemption under the provisions of Mass. Gen. Laws ch. 235 § 34A. This statute, entitled Exemptions of Annuities, Pensions from Attachment or Execution; Exceptions," is most frequently relied on by debtors claiming state exemptions in retirement plans in Massachusetts. The trustee argues, however, that the last sentence of Mass. Gen. Laws ch. 235 § 34A would exclude from exemption so much of Ms. LeClair's $86,000 initial annuity contribution as exceeds seven percent of her applicable income for the five years preceding her bankruptcy. This exclusion itself is qualified by a further exclusion limiting its application when the payment was from a qualified rollover transaction. Clearly, an evidentiary hearing is needed before a determination can be made as to the appropriate application of Mass. Gen. Laws ch. 235 § 34A to Ms. LeClair's annuity.[5]

## Conclusion

The trustee's objection to the exemption of both Mr. and Ms. LeClair in the Dodge Durango is sustained. The debtors will be permitted a single exemption in the amount of $700 in

---

[4] The amount withdrawn is taxed as ordinary income but in addition, with certain limited exceptions, § 72(t) of the Internal Revenue Code imposes a penalty equal to 10% of the amount withdrawn when an early distribution is taken from a "qualified retirement vehicle," which includes individual retirement annuities under § 408(b) of the Internal Revenue Code such as Ms. LeClair's.

[5] Although the debtor's post-hearing brief contains an attachment entitled "Exhibit '2' Debtors [sic] Income From Federal Tax Returns (Line 22)," the attachment is not verified and more importantly, suggests that it is a summary of their joint income. Mass. Gen. Laws ch. 235 § 34A requires an examination of the *individual's* income during the applicable five year period.[5] .

the vehicle.  The trustee's objection to the exemption of Ms. LeClair's annuity pursuant to Mass. Gen Laws ch. 175 § 119A  is sustained.  The trustee's objection to the exemption of the annuity pursuant to Mass. Gen. Laws ch. 235 § 34A will be set for an evidentiary hearing.

A separate order will enter.


Dated: May 19, 2011                                                                By the Court,


Melvin S. Hoffman
U.S. Bankruptcy Judge